IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


MICHAEL W. MINTON,

      Plaintiff,

vs.                                                      Case No. 5:05cv89-RS/WCS

DR. JANET SPANN,
ASST. WARDEN VARNES,
DR. CIUNGU,
SGT. HOLDEN,
PILAR GUDINO,
and NURSE JANE DOE,

      Defendants.

_____/


## REPORT AND RECOMMENDATION

On February 8, 2006, Defendants Holden and Ciungu, two of the five named

Defendants in this case, filed a motion to dismiss Plaintiff's claims on the basis that

Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e.

Doc. 38.  Plaintiff was reminded that he could file a response to the motion, doc. 40, and

he has filed a reply.  Doc. 44.

**Allegations of the amended complaint, doc. 15**

Plaintiff's complaint concerns the medical care he received following an accident

on October 23, 2003, in which Plaintiff fell down the stairs and broke his ankle.  Doc. 15.

Plaintiff complains about the delay in receiving care, the way he was eventually

transported to the hospital, and various problems he encountered at the institution during his recovery.  Plaintiff also complains about the medical treatment he received for an infection following surgery on his ankle when the steel plate and screws were removed.  *Id.*  The events following the surgery took place in 2004 and 2005.

It is alleged that Defendant Holden decided to use a regular van to transport Plaintiff to the hospital instead of a wheelchair accessible van and because of that fact, Plaintiff had to crawl on his knees to get in the van and was in extreme pain.  *Id.*, at 11-13.  The claim against Defendant Ciungu concerns his treatment of Plaintiff's infection in December of 2004, and January of 2005, more than a year after the original injury.  *Id.*, at 19.

**Defendants' arguments, doc. 38**

Defendants contend that although Plaintiff submitted grievances in the Department's grievance process, Plaintiff did not specifically name Defendants Holden and Ciungu in any grievances.  *Id.*, at 5.  Rather, Plaintiff's assertions in his various grievances concern inadequate medical treatment.  *Id.*  Defendants argue that

> . . . it was incumbent upon Plaintiff to include in his grievances the
> information that Defendant Holden had him to be transported in a van that
> was not wheelchair accessible and therefore, he had to crawl inside the
> van, and that defendant Ciungu took the easier course of treatment and
> not follow the orthopedic surgeon's prescribed treatment and allegedly
> failed to provide follow-up appointments for the removal of his hardware.

Doc. 38, p. 6.  Thus, Defendants assert that while Plaintiff alerted Defendants and the Department of Corrections about a medical issue in his grievances, "the underlying foundations" for Plaintiff's claims against Defendants Holden and Ciungu "were not raised in the Formal Grievance and Grievance Appeal."  *Id.*, at 6-7.

Defendants also state that Plaintiff did submit one grievance which mentioned Defendant Ciungu, but it "was not accompanied with the grievance and the log number of the grievance was scratched out, and the date of the response appears to be dated prior to October 23, 2003, which is the date that the plaintiff sustained an injury to his ankle." *Id.*, at 5. Defendants also appear to contend that Plaintiff did not attach a copy of his grievance appeal to the amended complaint. *Id.* Further, Defendants complain that none of the grievances which Plaintiff submitted to the Court with his initial complaint, doc. 1, were provided with the amended complaint. *Id.*[1]

**Plaintiff's response, doc. 44**

Plaintiff acknowledges that in his grievance, he did "not specifically complain of Dr. Ciungu by name, he does complain of the medical treatment, or lack thereof he was experiencing at Washington Cor. Inst. where at that time Dr. Ciungu was the chief health care provider." Doc. 44, p. 3. Plaintiff also contends that he submitted grievances which were responded to by Defendant Ciungu and, thus, the "grievances were directed to and answered by Dr. Ciungu in writing bearing his signature." *Id.* In addition, "Plaintiff asserts enough information has been provided to prison officials about the conduct complained of to take appropriate responsive measures." *Id.*, at 5.

As for his claims concerning Defendant Holden, Plaintiff states that he "was <u>not able</u> to file a grievance in the time-frame alotted [sic] to do so . . . ." *Id.*, at 5. Plaintiff explains that he could not timely exhaust . . .

---

[1] As pointed out by Plaintiff in his response, doc. 44, Plaintiff was advised that he could refer to the exhibits submitted with his original complaint because he had previously submitted so many exhibits. Doc. 13, p. 2.

> . . . because, first Plaintiff was in the hospital at Bay medical Center in
> Panama City where he underwent surgery and was under the influence of
> morphine, and then was in the Washington C.I. infirmary under the
> influence of other opiate narcotics, and then due to retaliation from
> Plaintiff's medical treatment complaints he was placed in confinement
> where he was refused grievance forms and threatened that he better stop
> filing grievances.

*Id.*, at 5-6.  By the time Plaintiff was out of confinement, he states that his "30-day time limit to file a grievance against Sgt. Holden was up." *Id.*, at 6.  Accordingly, Plaintiff contends that under § 1997e, a prisoner must exhaust all "administrative remedies as are available," but Plaintiff asserts that no relief was available to him because of the time limitations under the circumstances. *Id.*, at 8-9.

**Analysis**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA), mandates that "no action shall be brought" by a prisoner under any federal law until "such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory.  <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  <u>Alexander</u>, 159 F.3d at 1325; *see also* <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (holding that an excessive force claim is subject to the exhaustion requirement).  Even where an inmate seeks only monetary damages in a civil rights case, he must complete

the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  <u>Booth v. Churner</u>, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  Even if a grievance is initially denied as untimely, a prisoner must appeal the denial of his grievance.  *See* <u>Harper v. Jenkin</u>, 179 F.3d 1311 (11th Cir. 1999)(noting Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown").[2]

Furthermore, an inmate must "provide with his grievance all relevant information reasonably available to him" such as the "identity of any officials he thinks have wronged him and any witnesses."  <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-08 (11th Cir. 2000).  An inmate obviously cannot provide information that he does not know at the time (for example, the inmate cannot identify a particular officer), but must "provide as much relevant information as he reasonably can" so that officials passing on the grievance can make an informed and reasonable investigation and respond to the grievance.  <u>Brown</u>, 212 F.3d at 1207.  Inmates who wish to alert prison officials to a perceived problem "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures."  <u>Johnson v. Testman</u>, 380 F.3d 691, 697 (6th Cir. 2004), *relying on* <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002).  This requirement is important to preserve judicial economy and allow prison officials the first opportunity to correct a perceived wrong.  <u>Porter v. Nussle</u>, 534 U.S. at 524-525; *see also* <u>Burton v. Jones</u>, 321 F.3d 569, 575 (6th Cir. 2003).  The

---

[2] A prisoner must comply with the process set forth and established by the grievance procedures.  *See* <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir. 1999).

are seven important policies that underlie the exhaustion requirement as stated in

Alexander v. Hawk, *supra*.  Those seven policies are:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

Alexander, 159 F.3d at 1327 (quoting Kobleur v. Group Hospitalization & Medical

Services, Inc., 954 F.2d 705 (11th Cir.1992)); *see also* Johnson v. Meadows, 418 F.3d

1152, 1156 (11th Cir. 2005) (quoting Alexander, 159 F.3d at 1327, and concluding that

the exhaustion requirement contains "a procedural default complaint:  Prisoners must

timely meet the deadlines or the good cause standard of" the particular grievance

process.).

In Florida, the purpose of the grievance procedure as noted in the administrative

rules of the Department, is a "means for internal resolution of problems and improving

lines of communication."  FLA. ADMIN. CODE R. 33-103.001.  A clear and accurate

statement of the facts, addressing only one issue per grievance, is required by the rules.

FLA. ADMIN. CODE R. 33-103.55.

Plaintiff's argument that he could not timely exhaust his administrative remedies

as to his claim against Defendant Holden is unpersuasive.  Plaintiff was able to exhaust

claims concerning his medical treatment.  At the same time he submitted the grievances

concerning the delay in medical treatment,[3] Plaintiff could have complained about the
manner in which Defendant Holden transported Plaintiff to the hospital.  There are no
allegations concerning Defendant Holden or his actions such that prison officials were
on notice of Plaintiff's complaints against this individual.  The motion to dismiss should
be granted as to Defendant Holden.

Plaintiff's claims against Defendant Ciungdo not arise until December, 2004, and
carry into January fo 2005.  Doc. 15.  Plaintiff's grievances mention Dr. Spann (another
Defendant in this case) and allege delay in treatment.  Plaintiff does not specifically
mention or complain about Dr. Ciungu.

Plaintiff, however, filed a formal grievance dated December 28, 2004, asserting
that he had an infection, it had been eight days since he was told he was scheduled to
see a doctor, and yet he had not seen a doctor.  Doc. 1, ex. 3, p. 18.  The response
advised that Plaintiff had been transferred to Washington Correctional Institution, and
he should go to sick call at his new institution.  At the time Plaintiff initiated the
grievance, however, he was at RMC (the Reception and Medical Center) and could not
have been complaining about the actions or inactions of Defendant Ciungu.  *Id.*
Plaintiff's follow-up grievance complained again about the lack fo treatment and delay in
treatment by medical personnel at RMC, but advised that he was "immediately treated
by" a doctor at Washington Correctional Institution.  Doc. 1, ex. 3, p. 20.  This grievance
also fails to complain about anything that Defendant Ciungu did or did not do, although
Plaintiff does raise complaints about the infection.  In the amended complaint, Plaintiff's

---

[3] Plaintiff submitted a grievance on November 11, 2003, to the warden
concerning the delay in treatment.  Doc. 1, attachment 1, p. 10.

claims against Defendant Ciungu concern treatment for the infection during this period. However, having failed to make any mention of Defendant Ciungu or the treatment provided by this Defendant at Washington Correctional Institution, Plaintiff has failed to alert prison officials to these claims.  Plaintiff did not provide sufficient information such that prison officials were on notice of any problem or failure by Defendant Ciungu to treat Plaintiff.  Therefore, the motion to dismiss should be granted in favor of Defendant Ciungu as well.

If one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted.  Brown, 212 F.3d at 1206, n.1. Therefore, Plaintiff's claims against the remaining Defendants may proceed.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants motion to dismiss, doc. 18, be **GRANTED**, and Plaintiff's amended complaint, doc. 15 , be **DISMISSED** as to Defendants Ciungu and Holden for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997(e) and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2), and the case **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 27, 2006.


 s/      William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE TO THE PARTIES</u>**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.